## J. C. GRIFFING *v.* WILLIAM MILLS.

1. STATUTE OF LIMITATIONS: FOR WHAT PERIOD SUSPENDED DURING THE WAR.—The period of time for which the statute of limitations was suspended in this State during the war, is to be computed from the date of the passage of the different acts of the legislature preventing the running of the statute, until twelve months after the 2nd of April, A. D. 1866, the time fixed by the proclamation of the President of the United States as the "close of the war."
2. ATTACHMENT: AFFIDAVIT BEFORE WHOM MADE: WRIT BY WHOM ISSUED.—An affidavit for an attachment may be made in another State, and before a commissioner of the State of Mississippi resident in the State where the affidavit is made. The attachment law of this State does not require that the writ of attachment shall be issued by the officer before whom the affidavit is made.
3. ATTACHMENT: AMENDMENT OF AFFIDAVIT.—An affidavit for an attachment may be amended, or a new affidavit filed, and the lien of the writ of attachment will not be affected thereby. Rev. Code, 378, article 13.
4. ATTACHMENT: PUBLICATION:—A publication of notice to the defendant of the issuance of an attachment, is sufficient, if made in four successive weekly issues of a newspaper, and requiring the appearance of the defendant at a Term of the court, to be holden more than four weeks after the first publication of the notice.
5. ATTACHMENT: PUBLICATION WHEN MADE.—A publication of notice to the defendant of the issuance of an attachment is to be made after the levy of the writ; but may be made before a return by the sheriff of "not found or summoned."

ERROR to the Circuit Court of Panola county. Hon. John W. Thompson, judge.

*W. and J. R. Yerger*, for plaintiff in error, contended,

1. That a commissioner for the State of Mississippi, resident in the State of Tennessee, was not an officer authorized to administer oaths in attachment cases. That an affidavit for an attachment can be made alone before the officers enumerated in the attachment law. Rev. Code, 372, article 2.

2. That the Code requires that the officer before whom the affidavit is made shall issue the writ. Rev. Code, 372, 373.

3. That publication had not been made for the length of time prescribed by law.

The notice is required "to be published once a week for four weeks." Rev. Code, 338, article 19. The language is imperative, and the notice must be given. *Ridley* v. *Ridley*, 24 Miss. R. It must also be published for the requisite length of time, " once a week for four weeks."

The publication in this case was only made for three weeks, commencing on the 1st of March and ending on the 22d. There were four insertions of the notice, but this was not sufficient ; four weeks is the requirement of the law.

4. That there was no authority to make publication for the defendant, or take judgment against him, until the sheriff had returned whether the defendant " not found or summoned." Rev. Code, 373, 374, articles 4, 6, 19.

The argument of the Messrs. Yerger, on the plea of the statute of limitations, is not on file.

*John W. C. Watson*, for defendant in error, contended,

1. That the affidavit made before a commissioner in Tenn. for the State of Mississippi was good in law. Rev. Code, 520, articles 244, 245, 246 ; also page 382, article 44.

2. That the clerk has authority to issue writs of attachment on affidavits not made before him. Rev. Code, 378, article 16.

3. That a defective attachment bond or affidavit may be amended. Rev. Code, 378, article 18.

Had the objection been made to the affidavit in the court below, a new one if necessary could have been supplied.

4. That publication was made for the length of time required by law. Rev. Code, 378, article 19. It was made "once a week for four weeks," and more than four weeks elapsed from the date of the first publication to the first day of the court.

5. That publication may be made before a return of "not found" by the sheriff. The language of the statute is "when any writ of attachment shall be executed, if the defendant be not found or summoned, the clerk shall cause a notice to be published," etc. Rev. Code, 378, article 19.

6. That the statute of limitations as to the writs of error was suspended from the 31st December, 1862, until twelve months after the close of the war.

"Now the last of the armies of the Confederate States surrendered during the spring of 1865, and as to the State of Mississippi, the war then certainly closed.

But the question as to the time of the close of the war properly belongs to the executive department of the State, and its decision is binding upon the judiciary; and by the executive department of the State the question has been decided.

By an act of the legislature, the appropriation to carry on the geological survey of the State was suspended "until the close of the present war, and twelve months thereafter." Acts of 1861, chapter 54, page 72.

Under this act the governor has decided the war closed May 21, 1865, and that the appropriation for the geological survey recommenced May 21, 1866, at which time it is submitted the statute of limitations commenced running in this State.

By adopting the time fixed by the governor, as that at which the war closed, no injustice will be done to creditors. The courts were opened under Governor Sharkey's proclamation in October, 1865. Something is due to creditors, and to the repose of the community, and the time for the running of the statute of limitations should be so fixed, as to do equal justice to both parties.

ELLETT, J., delivered the opinion of the court.

This suit was commenced by attachment in the court below. The affidavit was made in the State of Tennessee, before a commissioner appointed by the Governor of Mississippi, and the bond was taken and writ issued by the clerk of the Circuit Court of Panola county.

The writ being returned, levied on real estate, without any return of personal service on the defendant, the clerk made publication, in the form prescribed by law, in the weekly Panola *Star*, once a week for four successive weeks. The publication was made in the numbers of the paper dated the 1st, 8th, 15th and 22d days of March, 1860, and required the appearance of the defendant on the seventh Monday after the fourth Monday of the same month.

On the 17th of May, 1860, judgment by default was entered, and the writ of error was issued on the 7th day of January, 1867, in pursuance of a written agreement of the counsel of the parties, dated December 10, 1866, endorsed on the record. The errors assigned are:

1. That the affidavit was not made before an officer authorized to administer oaths in attachment cases.

2. That the publication was not made once a week for four weeks, as required by law.

3. That there was no return on the writ, that the defendant was summoned or not found, and therefore no authority to make the publication, or take judgment thereon against the defendant.

The defendant in error pleaded the statute of limitations of three years, in bar of the writ of error, which was demurred to; and the case is submitted on the plea of the statute, and also on the errors assigned.

The first question is, whether the writ of error was barred by the statute of limitations.

The judgment was rendered on the 17th of May, 1860. An act was passed on the 31st of December, 1862 (chap. 10, page 78), whereby the statute of limitations was suspended "until twelve months after the close of the present war, or until otherwise provided by law." At the date of the passage of this act, the limitation of three years had not run against this writ of

Griffing *v.* Mills.

error, but only two years, seven months, and fourteen days. The limitation did not commence running again until twelve months after the close of the war. It is admitted that the time when the war closed is to be determined by the action of the executive department of the government, whose decision is binding on the judiciary. But it is contended that the determination of the question belongs to the executive department of the State, and not of the Federal Government; and that the governor has decided, in reference to the suspension of the appropriation for the geological survey of the State, until twelve months after the close of the war, that the war closed on the 21st of May, 1865, one year after which time the appropriation was revived.

We are not advised of the decision of the governor on the point alluded to, but we are satisfied that the decision of it was not a political matter that would be binding upon this court. Nor do we think the question as to the time when the war closed was one for the determination of the executive of the State. On the contrary, the war must be considered as existing as long as the authorities of the United States chose to continue it after the overthrow of all opposition to their power; and it was the province of the President of the United States to decide when the insurrection was suppressed, and when hostilities were terminated. This was done by the President, by a proclamation dated April 2, 1866, in which he declared that in Mississippi, and in all the States except Texas, the insurrection was then at an end, and was thenceforth so to be regarded. In the absence of any legislation on the subject, we are obliged to accept the date of this proclamation as the time of the close of the recent war. The statutes of limitation have, therefore, not yet commenced to run, and will not begin to operate until the 2d day of April next (1867). As the statute of limitations has not, according to these views, run for three years from the date of the judgment, the plea of the statute in this case must be overruled.

We proceed to consider the grounds relied on for the reversal of the judgment :

Griffing *v.* Mills.

1. The writ of attachment was issued by the clerk of the Circuit Court of Panola county, on an affidavit made, not before him, but before a commissioner appointed by the governor of this State, and residing in the State of Tennessee; and it is insisted that the affidavit can only be made before one of the particular officers enumerated in the second article of the attachment law (Rev. Code, 372), and that the writ of attachment can be issued only by the officer before whom the affidavit is made, as prescribed in the third article.

This view is based on a very strict and literal construction of the act. The words would sustain the position contended for, but it is declared in the forty-fourth article that the act "shall be construed in all courts of judicature in the most liberal manner, for the detection of fraud, the advancement of justice, and the benefit of creditors." Such, indeed, is the spirit in which all such remedial laws are construed. We must, therefore, look to the substance of the provisions and give effect to them in such manner as will promote the object in view and best subserve the intention of the legislature.

The main object of these clauses of the second and third articles, is to designate the officers by whom writs of attachment may be granted, and the large number of officers named, shows that it was intended to make the resort to this remedy as easy and convenient as possible. This was wise and proper, for since the removal of all means of acting upon the person of the debtor, by arrest of his body, the creditor ought in justice to have the privilege of summary process, in proper cases, to prevent his property from being removed beyond the reach of the law. The affidavit is but preliminary to the proceeding, as the foundation on which it rests, and there can be imagined no reason why it should be required to be made before the officer granting the attachment. All that is material is that it shall contain what the law requires, and shall be sworn to before an officer competent to administer an oath. Article 222 of the circuit court act (Rev. Code, 516) authorizes various officers who are not enumerated among those empowered to grant attachments, "to administer oaths and affirmations, and to

take and certify affidavits, whenever the same may be necessary or proper in any proceeding in any court, or under any law of this State." Article 244 of the same act, which provides for the appointment of commissioners residing in other States, enacts that such commissioners shall have full power to administer oaths and affirmations, and to take and certify depositions and affidavits, to be used in this State, * * and their official acts shall be as effectual in law, as if done and certified by any officer thereunto duly authorized in this State?

All the statutes *in pari materia* are to be taken together, as constituting but one act, and the particular provision contained in the attachment act, in regard to the officers authorized to take the affidavit, is to be construed in reference to, and in connection with, these additional articles just quoted; the first of which authorizes all affidavits necessary or proper in any proceeding in any court, or under any law of this State, to be taken before any of the officers named therein; and the second of which articles declares all such affidavits, when taken before a commissioner in another State, to be as effectual in law as if taken before any duly authorized officer in the State. A fair interpretation of all these provisions brings us to the conclusion that the affidavit is sufficient to sustain the attachment in all cases, where it appears to have been taken and certified by any person authorized by our laws to administer oaths.

If we had any doubt about the correctness of this result, we might probably be reconciled to it by the consideration that if we were to reverse the judgment on this ground, it would only be to send the case back to the court below, where the plaintiff would be entitled to file a new affidavit, not taken before the officer who granted the attachment, the lieu of the writ being in the meantime preserved. Rev. Code, 378, article 15.

2. It is next objected that the publication was not made once a week, for four weeks, as required by law.

The record shows that the publication was made in four successive numbers of the Panola *Star*, dated respectively March 1st, 8th, 15th, and 22d, and that it required the appearance of the defendant at a Term of the court to be held more than four

weeks after the date of the first publication. This is all·the statute requires. Rev. Code, 378, article 19.

3. The last error assigned is not well founded. The publication is to be made if the defendant is "not found or summoned." This means that, in the absence of any return showing that the defendant has been summoned personally, the clerk shall make the publication. It is not to be made until after the writ has been executed by a levy on property of the defendant, but it may be made before the return term of the writ. It might happen that the defendant would be summoned after publication made, as he might be found in the county after that event, and before the return of the writ. Either form of notice would be good, and both might appear to have been given. And whether found or summoned, or not, it could not possibly prejudice the defendant that he was also notified by publication.

The judgment of the court below will be affirmed.