M. J. BUCKINGHAM Ex'rx, etc. v. SAMUEL P. WALKER, Adm'r, etc.

1. NEW TRIALS—EVIDENCE—VERDICT.—If the evidence before a jury be vague and contradictory and the verdict not against the clear weight and preponderance of evidence, the court will not be justified in saying that the verdict is wrong, and granting a new trial.

2. LIMITATIONS—PLEADING.—On a note maturing August 10, 1859, suit was brought April 26, 1866.   The defendant (administrator) pleaded that suit was brought within six years and nine months after maturity of the note.   The statute of limitations having been suspended for about five years, from December 31, 1862, a demurrer to the plea was properly sustained.   The court is bound to take judicial notice of the suspension of the statute, and the plea should have averred that the time of the limitation had expired, after deducting the time of the suspension, and computing only the time theretofore and thereafter.

3. LIMITATION OF ACTIONS AGAINST EXECUTORS AND ADMINISTRATORS.—The 12th section of the statute of limitations of 1844 (art. 11, § 2, ch. 57, Code of 1857 ; § 2155, Code of 1871) does not apply unless the cause of action had accrued against the decedent whose legal representative is sued in his lifetime.   Citing 25 Miss. 506 ; 31 ib. 704 ; 27 ib. 197 ; 38 ib. 224.

4. Witnesses against estate of deceased person.—A surviving party to a contract with a deceased person, possibly involving a liability of several thousand dollars, is incompetent, as a witness, to exonerate himself. Citing Faler v. Jordan, 44 Miss. 289.

5. Contracts.—It is well settled that the acceptance of a promissory note for a pre-existing debt is not a settlement of it unless expressly so agreed, provided the note has not been transferred and is not outstanding in the hands of an assignee.

6. Trusts and trust funds.—A person who is administrator of one estate and guardian of another, has no authority or power to exchange or convert an indebtedness to the one into an indebtedness to the other, or to release a debtor to one of the estates upon consideration of his becoming a debtor to the other, without first obtaining the sanction of the proper court, upon the terms and conditions and in the mode provided by law.

Error to the circuit court of Monroe county. Boone, J.

To an action of debt instituted by an administrator against an executrix, on the 27th of April, 1866, on a promissory note due August 10, 1859, the defendant pleaded:

1. General issue.

2 and 3. *Non est factum*.

4. Limitation of six years and nine months since maturity of the note.

5. Limitation of four years and nine months since the grant of letters testamentary.

6. Limitation of two years after notice to creditors to present claims for probate and registry, there having been no presentation of such claims sued on.

7. Payment.

8. That after maturity of the note, and before this suit, on the 24th June, 1861, said note belonged to estate of Wm. F. Dancey, of which estate, plaintiff's intestate, Wyatt Moye, was then administrator, and as such administrator, then held and controlled said note, and said Moye was then guardian of the minor heirs of Moses Westbrook, and as such held large sums of money for loan and investment on account of said wards; and that defendant, B. M. Bradford, to raise money to pay off the note sued on (to Moye, as admin-

istrator of Dancey), on the 24th of June, 1861, execu-
ted to Moye, as such guardian, his other separate note
of that date, and due 1st January, 1863, for amount
then due on the note here sued on and then held by
Moye, administrator of Dancey, with interest added
thereon at an increased rate, viz., for principal,
$7,118.64, which was then received and discounted as
cash by said Moye, as such guardian, for a sum equal
to the full amount then due to estate of Dancey, on
the note sued on, which money he then and thereafter
held as administrator of Dancey; and Moye and Brad-
ford then executed, under seal, the writing in the plea
set out, which writing is in substance this, viz.: It
recites the making of the note sued on, and that same
is now in the hands of Moye, administrator of Dancey,
and in order to put Moye in funds to the amount of
said note and interest, Bradford has given his note for
$7,182.64, payable to Moye, as such guardian, on 1st
January, 1863. "Now, when said last mentioned note is
fully paid off, then the first-named note is to be con-
sidered liquidated and paid, but it is distinctly under-
stood and agreed that none of the parties are to be
released, nor the first described note canceled until the
last is fully paid and discharged."

And so, says Mrs. Buckingham, executrix, the note
sued on was, by Bradford, paid off and discharged to
Moye, administrator of Dancey, etc.

This plea avers that Bradford was principal in the
note sued on, and the others his sureties.

9. That Bradford was principal in the note sued on,
and Cocke and Buckingham, the other makers, were
his sureties only, which was "known to the payee"
(Wicks), and after maturity thereof and before this
suit, viz., on the 24th June, 1861, plaintiff's in-
testate, Moye, then holder of said note, and having
knowledge of said suretyship, for value received of
Bradford, agreed and stipulated with him, without the

knowledge or consent of said sureties, to give him further time thereon, and extended the day of payment thereof until the 1st January, 1863. A demurrer to this plea was sustained, but, by agreement here, it is considered at issue, with verdict for plaintiff.

10 Avers that the note sued on was made by Bradford as principal, and by Cocke and Buckingham as sureties, and this was known to the payee; and after maturity and before this suit, plaintiff's intestate, Wyatt Moye, became the holder thereof, as guardian for the minor heirs of Moses Westbrook, deceased, and had knowledge of said suretyship, and on that day, without the knowledge or consent of said sureties, by the tenor and effect of an agreement in writing, under seal of that date, executed mutually by and between said Moye and said Bradford, it was stipulated and provided that said Bradford should have further time on said note, and the day of payment thereof was extended until the 1st day of January, 1863, in consideration that said Bradford had executed to said Moye, as such guardian of said heirs, his own note for $7,182.64, due January 1, 1863, which said agreement between them is set out in its words, being the same agreement shown by the eighth plea.

The agreement set up in 8th and 10th pleas is this, viz.:

"Whereas, B. M. Bradford, of Aberdeen, Miss., executed his note, with Cocke & Buckingham as joint signers, on the 6th day of October, 1856, to M. J. Wicks for the sum of $5,112, payable on the 10th day of August 1859. And the said note being now in the hands of Wyatt Moye, administrator of Wm. F. Dancey's estate. And in order to put said Moye in funds to the amount of the above note and interest, said Bradford has given his individual note for $7,182.64, payable to Wyatt Moye, guardian for the heirs of Moses Westbrook, on the 1st day of January,

1863. Now, when the last mentioned note is fully paid off, then the first named note is to be considered liquidated and paid; but it is distinctly understood and agreed that none of the parties are to be released, nor the first described note canceled, until the last is paid and fully discharged.

Given under our hands and seals this 24th day of June, 1861.

(Signed)     B. M. BRADFORD, [SEAL.]
             WYATT MOYE,    [SEAL.] "

To the 2d and 3d pleas—*non est factum*—there was issue in short, by consent.

There was a demurrer to the 4th plea for cause:

1. The statute of limitations was suspended from January 29, 1862, to April 2, 1867.

Demurrer to 5th plea (4 years and 9 months) for causes:

1. The cause accrued, not against "defendants" in his lifetime, but against defendant, as his executrix, after his death.

2. The statute pleaded does not bar this action.

3. The statute was suspended from 29th of January, 1862, etc.

Demurrers to 4th and 5th pleas sustained, and defendant declined to plead over.

Replications to 8th plea:

1. Issue in short, by consent.

2. That the note of Bradford for $7,182.64 "is not now, and was not at the time of the institution of this suit," the property of said Moye, guardian, etc., but was the property of the plaintiff, as administrator of Moye, and said note is here offered and tendered to be delivered up and canceled. A demurrer to this replication was sustained.

3. The said note of Bradford for $7,182.64 "did not, at the time of the execution of said note, and the written agreement in said plea set forth, become the prop-

erty of Wyatt Moye, guardian," etc., said Moye, as such guardian, having no authority or power to invest the funds of said wards in said note.

Replications to 10th plea:

1. In short, by consent.

2. Wyatt Moye, as guardian, etc., had no power or authority to agree to the extension of time in said plea mentioned, or to bind the estate of said heirs of Westbrook by the agreement in said plea mentioned. A demurrer to this replication was sustained.

Defendant Buckingham, executrix, demurred to plaintiff's 2d and 3d replications to her 8th plea, and 2d replication to 10th plea.

Demurrer to 2d special replications to 8th and 10th pleas sustained, and leave to reply over, but no further replications made.

The 7th charge, mentioned in argument of counsel, as asked for defendants and refused, is this:

" By the legal construction of the agreement of June 24, 1861, and of Bradford's note for $7,182.64 to Moye, as guardian, due January 1, 1863, the effect of said agreement was to wait with Bradford and extend the time upon the note here sued upon until the 1st day of January, 1863, and if the jury believe, from the proof, that such extension was given upon a new and valuable consideration, and that Cocke & Buckingham were the sureties of Bradford in the note, and that such suretyship was known to the payee and the holder of the note, and that such extension was without the knowledge or consent of the sureties or of their executors, if they were dead, then the sureties were thereby discharged altogether."

The verdict was against all the defendants.

A motion for new trial was overruled.

For a correct understanding of the points decided by the court, no summary of the testimony, nor of the

argument relating to it, beyond what is stated in the opinion of the court, is deemed necessary.

*Reuben Davis*, for plaintiff in error,

Contended, that the court below erred in sustaining the plaintiff's demurrer to the fourth plea. If the statute of six years and nine months was not a bar, it was because the statute had been suspended, and that fact should have been presented by replication.

Insisted, that the court erred also in sustaining the plaintiff's demurrer to the fifth plea; that plea asserts that suit was not instituted within four years and nine months after the grant of letters. The 11th article of section 2, chapter 57, of the Code of 1857, declares that after the four years from the grant of letters of administration, no suit shall be brought against an administrator or executor. The date from which the statute is to commence running is, in this case, fixed by the grant of letters, and not by notice or in any other mode. The grant of the letters is the notice, and none other is required by the law. It is of itself potential, efficient and decisive. Its decisiveness cannot be disturbed or varied by any act whatever of the executor, etc., or creditor, unless, possibly, a promise made before the bar attached by the administrator or executor to pay at a future time. In this view of the statute of four years, I am fully sustained by numerous decisions of our own state. See Turner v. Ellis, 24 Miss. 180; Benjamin v. Robinson, 25 ib. 506.

But the case of Wilkinson v. Mary Moore, 27 Miss., 365, seems to assert a contradictory doctrine, and to give creditors four years and nine months after the grant of letters, within which to sue. I cannot see the reason for the rule established, and, as it seems to be merely arbitrary, I think it should be abandoned.

But, even giving the plaintiff the benefit of this rule, the plea is still good, and constitutes a bar to this

action. The four years certainly commenced running on the 7th day of July, 1857, and continued to run until the 31st day of December, 1862. It is contended that this view of the statute cannot be correct, for the reason that on the 6th day of August, 1861, the legislature passed an act suspending the statute of limitations; this act was a part and parcel of the law "suspending the collection of debts," and was to continue in force only so long as the law itself continued in force, and the act itself was unconstitutional and void *ab initio*, and the clause suspending the statute of limitations had no duration, and was never operative. Hoffman v. Bank of Kentucky, 40 Miss. 29.

But could the objection to the plea be raised by demurrer? I think not; the remedy was by replication, and the objection could duly have been presented in that form.

Next, as to the question whether the contract of the 24th day of June, 1861, entered into between Bradford and Moye, and set up as a defense to this suit by the tenth plea of defendant, is a valid defense. The plea asserts that that contract operated as a payment of the note sued on; or, if not a payment, at least an extension of the time of payment, and thus a release of the sureties. This agreement is clearly a covenant not to sue until it should be ascertained that default in the payment of the last note should be made; and if that was the legal effect of the agreement, then the right of Moye to sue was suspended and the sureties released. But it must be clear, that money was raised on the last note of Bradford, executed by him as a part of the contract, and applied by Moye in the payment of the note sued on. And this payment was a satisfaction of the note, complete and final. The money was Bradford's when advanced to him by Moye on this last note, and the application of his money in satisfaction of the note sued on constituted a payment and extinguish-

ment of the note. But the plaintiff replies to this plea that the contract contained a proviso retaining the liability of the sureties. This is true, but the proviso does not retain the remedy against the sureties or the right to proceed at once, and therefore cannot aid the plaintiff.

It will be asserted upon the authority of Lohier v. Loring and others, 28 Miss. 540, that the proviso in this contract operates to prevent its releasing the sureties. This case, and the authorities therein referred to, do not sustain them. The proviso in that case, and all the others referred to in it, retain expressly the right of the payee in the note to proceed in the enforcement of his rights and remedies. The language is: "Provided always, and it is hereby expressly agreed and declared that it shall be lawful for the said bill holders to execute these presents without prejudice to their rights and remedies, upon the said bills, against person or persons whomsoever, and that they shall be at liberty to enforce and adopt all or any such right remedies against any such person or persons in the same manner as if these presents had not been executed." The contract of Bradford and Moye contains no such reservation. The case of Sohier v. Loring was one of composition, and had for its consideration the full surrender of all the property of the principal maker of the note, and for the benefit of his creditors, including his sureties.

The case now under consideration is not a case of composition. There was no surrender of property, but the object was a loan of money for the immediate use of Moye and Bradford, to pay off and satisfy the note sued on in this action. There was no reservation of remedy against the sureties. The remedy was suspended by force of the agreement, until the default of Bradford to pay his note to Moye. The sureties and principal were placed on the same footing by the con-

tract. The sureties could no more be proceeded against than the principal, and he certainly could not have been proceeded against until default by Bradford. The rights and remedies against the principal debtor, Bradford, and his sureties were suspended until the 1st of June, 1863, to await the contingency of the payment or default of payment of the last note executed by Bradford, the principal debtor.

The case of *ex parte* Guildfurd, 6 Vesey, 805, does not support the right of the plaintiff to maintain this action, more strongly than the case of Sohiers v. Loring, nor does the case of Smith et al. v. Elizabeth Winters, reported in 4 M. & W. 432, nor does the case in 16 ib. 128, go further.

Nicholson v. Revill, 4 Ad. & Ell. 675, does not give greater support. The case of the American Bank v. Baker, 4 Metc. 175, and of Clagett v. Solomon, 5 Gill & Johns. 314, are not so strong.

All the decisions make a distinction between instruments that may be construed to contain covenants not to sue, and mere compositions. The one operates as a release of the sureties, whilst the other is a mere surrender or assignment of the rights and credits of the principal debtor. 4 Ad. & Ell. 675, draws the distinction between a release and a composition, and I think clearly shows that the instrument executed by Bradford to Moye, in this case, is a release, and not a composition. If a release, then the sureties are discharged; if a composition, they are not. To show that this was not a composition, there was no assignment of property; on the other hand, it was an arrangement for the procurement of money to enable Moye to pay the estate of Dancey the amount of the note of Bradford, and sued on in this action, which he had transferred to that estate, and it is evident the money was obtained upon the note of Bradford, executed in 1861, and applied by Moye in the payment to Dancey of the note

sued on, and, if so, Moye's remedy against Bradford was suspended, and if so, the sureties were released. The suit shows that the note was the property of Moye, and we must infer that he had settled with the estate if Dancy took up the note.

Now, we must conclude that the note of Bradford, Cocke and Buckingham was retained as collateral security, and not as the principal source of indebtedness.  Story on Prom. Notes, § 438, 413–416; 18 East, 576; 1 Pars. on Cont., title, Novation.

"If there be any valid agreement between maker and the holder, whereby the holder agrees to give credit to the maker of the note after it is due, or whereby the payment is postponed to a future day, and this agreement is made without the consent of the indorsers."  Story on Prom. Notes, § 413.

Now, certainly this agreement between Bradford and Moye, did give more than a year of time, and the consideration was ample.

To the same effect, is the case Hunt v. Knox, 34 Miss., and other decisions of our courts.

*George L. Potter*, on the same side,
Filed also an elaborate brief, directed chiefly to an analysis of the testimony.

*Houston & Reynolds*, for defendant in error,
Elaborated the testimony at length, and observed, that the presumption of law, that one partner has no authority to use the firm name as surety for another, may be overcome, not only by direct evidence of authority, but from usage or frequent recognition of such signature, or from such other similar facts as would satisfy a jury that the signature was for the partnership and by its authority.  Pars. on Part. 215, 216; Stall v. Catskill, 18 Wend. 477.

The testimony was sufficient to overcome the pre-

sumption of law, that Cocke, even if he signed the note, had no right to use the firm name as surety for another; that the testimony was sufficient to authorize the jury in finding that the signature was by the authority of the firm.

Paper to which the partnership name has been affixed by one partner, by way of accommodation, is always binding upon the firm in the hands of a *bona fide* holder for value, taking it without notice of the circumstances, express or implied. Catskill v. Stall, 15 Wend. 364; Austin v. Vandermark, 4 Hill (N. Y.) 259; Gano v. Samuel, 14 Ohio, 592; Waldo Bank v. Lambert, 16 Me. 416; Mauldin v. Bank of Mobile, 2 Ala. 513; Beach v. State Bank, 2 Carter (Ind.) 488.

This principle is not changed by our statute, which allows the benefit of all want of consideration, failure of consideration, payments, discounts, set-offs, in the same manner as though suit had been brought by the payee. Code of 1871, § 2288.

We insist that in any view the evidence was sufficient to sustain the verdict of the jury on the issues presented as to the *factum* of the note.

Should the verdict be set aside on account of the issues raised by the 8th, 9th and 10th pleas, and did the written agreement and the testimony adduced in reference operate as a payment of the note sued on, or as a release of the sureties?

Did the written agreement operate as a payment of the note sued upon in this action?

1. A written agreement must be so construed as to give effect to every portion of it. One of the stipulations in the written agreement is: "Now, when the last mentioned note is fully paid off, then the first named note is to be considered liquidated and paid, but it is distinctly understood and agreed that none of the parties are to be released, nor the first described note canceled." The language of the writing is, that the

note for $7,182.64 is not to be a payment of the note sued on, until it (the larger note) is fully paid off."

2. That the larger note was not to operate as a payment is manifest from the intention of the parties. Both notes were still retained by Moye, and the written agreement was handed to Bradford to protect him from the double liability which he had assumed for the same debt. The larger note was intended to be a collateral security for the one sued upon. It gave to the creditor an increased usurious rate of interest. The principal of the first note is $5,112; interest at 6 per cent, from 10th August, 1859, date of maturity, to 1st January, 1863, time of maturity of large note, is $1,039.46, which, added to the principal, makes the sum of $6,151.46. If you will calculate interest on first note at ten per cent, and add five per cent of principal and this interest, it will make the amount of the note. The large note, we remark in passing, is void to the extent of the usurious interest.

3. It is a general rule of law, that one simple executory contract being substituted for another does not extinguish the latter. Johnson v. Johnson, 11 Mass. 359; Mooning v. Marine Ins. Co., 27 Ala. 254; Story Prom. Notes, §§ 104, 404.

Nor will a note be a payment or a discharge of the original debt, if the holder discount it, provided he has afterwards to pay it. 2 Pars. on Notes, 155; Kean v. Dufresne, 3 S. & R. 233.

And even if Moye discounted the larger note, as is contended, with the funds of the Westbrook heirs, still it would not be a payment, as he has had subsequently to pay the amount of the funds used by him on final settlement.

4. But it was contended in the court below that the larger note was a payment of the one sued on, because it was outstanding in the hands of Moye, as guardian.

We admit, that if, at the time of the trial the larger

note was outstanding in the hands of a third person, or even in the hands of Moye as guardian of the West-brook heirs, that it would operate as a payment. A transfer of a note, given as collateral security and remaining outstanding in the hands of a third person, will operate as a payment *pro tanto.* At the trial plaintiff below produced the larger note (the collateral) and offered to deliver it up and cancel it, and proved the insolvency of the maker, Bradford. The note being in the possession of Moye, owned by him nominally and being offered to be delivered up, is no payment. Hughes v. Wheeler, 8 Cow. 79; 2 Pars. on Notes, 150, note *a*; Thornton v. Blanchard, 22 Pick. 18; Schemmelpen-nick v. Bayard, 1 Pet. 264; Miller v. Lumsden, 16 Ill. 161; Holmes v. O'Camp, 1 Johns. 24.

5. But, even according to the allegations in the pleas, the written agreement did not operate as a payment "unless Moye then held sufficient funds as guardian of the Westbrook heirs to discount the note, and did actually discount the same," averments which are not sustained by any testimony.

II. Did the written agreement of June 24, 1861, in effect extend the time of payment of the note sued on until January 1, 1863, the time of the maturity of the larger note mentioned in the agreement, and were Cocke and Buckingham's sureties released on account of said extension of time, without their knowledge or consent?

We insist, 1. The legal construction of the written agreement, taken in connection with the larger note or by itself, does not authorize the conclusion that it extended the time of payment of the note sued upon until January 1, 1863. We have already shown that the note of Bradford (the larger note) was given merely as collateral security to the note sued upon, and that there was no agreement to forbear suit or extend time of payment until the maturity of that note. The giving

of one note, due at a distant day, as a collateral security for another, without further agreement, is not an extension of time of payment until the maturity of the collateral.  " Taking a bill of exchange from the principal, as a collateral security, with an agreement to apply the proceeds, when collected, to the extinguishment of the original debt, is not giving time in a manner which binds the parties, and does not, therefore, discharge the sureties." Wade v. Staunton, 5 How. (Miss.) 633; United States v. Hodge, 6 ib. (U. S.) 279; Stevenson v. Austin, 3 Metc. 474; Lincoln v. Bassett, 23 Pick. 154.

The legal effect of the note and written agreement was not, as is assumed by the charge, an extension of of the time of payment until 1st January, 1863.

2. But if the construction placed upon the agreement by the charge was the proper one, still it did not operate to discharge the sureties.

The agreement contains the stipulation, " but it is distinctly understood that none of the parties are to be released." An agreement by a creditor with his debtor, to give him time to a fixed date, and for a new and valuable consideration, does not operate to discharge a surety where there is a stipulation that none of the parties are to be released, or where the remedies against the other parties are reserved. Metcalf, J. (6 Cush. 545), says: " It is settled in England that a discharge or giving time by a creditor to his principal debtor will not discharge the surety, if there be an agreement between the creditor and the principal debtor that the surety shall not be discharged. Sohier v. Loring, 6 Cush. 545; Viele v. Hoag, 24 Vt. 46; Blackstone Bank v. Hill, 10 Pick. 129; Kearsley v. Cole, 16 M. & W. 128; Wagman v. Hoag, 14 Barb. 232.

In Hunt v. Knox, 34 Miss. 655, it is decided that an agreement for forbearance of suit between the creditor and principal debtor, which stipulates that all the

rights of the creditor against the sureties should remain unimpaired (or that none of the parties are to be released), will not discharge the surety for it imposes on the principal the duty of procuring the surety's assent, and if he failed, the creditor might choose to treat the contract as at an end. 34 Miss. 675–'6.

3. But admit that the written agreement was an extension of the time of payment, yet it will not discharge the sureties unless suretyship was known to Moye.

. Moye became the owner and holder of the note by virtue of the blank indorsement of Wicks. He (Moye) had no connection with the original consideration of the note.

The note is a joint note; the suretyship of Cocke and Buckingham does not appear on the face or in the body of the instrument. The written agreement is: "Whereas, B. M. Bradford executed his note, with Cocke and Buckingham as joint assignees." The suretyship does not appear in the written agreement.

That the fact of the suretyship must be known to the creditor before an extension of time will discharge the sureties, we refer to Elwood v. Diefendorf, 5 Barb. 398; Nichols v. Parson, 6 N. H. 30; Agnew v. Merut, 10 Minn. 308; Buck v. Conger, 8 Tex. 66.

4. But there was no consideration for such extension. The note sued on, as appears from the agreement, was then in the hands of Moye, as administrator of Dancey, the property of the estate of Dancey. The note given for the pretended extension of time was payable to Moye as guardian of the heirs of Moses Westbrooks, deceased. We insist that a note payable to Moye as guardian, and which is the property of himself or wards, is not a consideration for an extension of time on a note, the property of the estate of Dancey.

5. But lastly. Moye was not the payee of the note, but the transferee by delivery. If he had been a party

to the note, and cognizant of the relation which Cocke and Buckingham bore to Bradford, his sureties, we do not doubt but that parol testimony was admissible to show such relation. But as against Moye, the transferee, Cocke and Buckingham could not show by parol that they were sureties. 1 Pars. on Notes and Bills, 233, 234.

IV. The seventh charge asked by defendants below and refused to by the court is, in substance, that the written agreement was, in effect, an extension of time upon the note sued upon, until January 1, 1863, and if the jury believe that such extension was upon a new and valuable consideration, and that Cocke and Buckingham were sureties, and that this was known to Moye, and that such extension was without the knowledge or consent of the sureties, the jury will find for the defendant.

The charge was properly refused for the reasons already stated.

V. Was the demurrer to the fourth and fifth pleas of Mrs. Buckingham properly sustained?

1. The fourth plea is, that plaintiff's right of action did not accrue within six years next before the commencement of this suit.

The note sued upon matured the 10th of August, 1859; the action was commenced April 26, 1866.

The statute of limitations was suspended from 29th January, 1862, to 2d April, 1867.

This suspension of the statute was a matter of public law, of which the courts will take judicial notice, and it was not necessary to reply the suspension. Where there is an exception to the statute, such as infancy, coverture and the like, dependent upon the existence of certain facts, the facts which create the exception must be replied to the plea of the statute. Griffin v. Mills, 40 Miss. 614; Dowell v. Webber, 25 S. & M. 452.

2. The fifth plea is: That on the 5th of July, 1857,

letters testamentary upon the last will and testament of S. H. Buckingham, deceased, were granted to defendant, and that suit was not commenced within four years and nine months next following said grant and issuance of letters testamentary.

The statute is: "No action or *scire facias* shall be brought against any executor, etc., upon any judgment or other cause of action against his testator, * * * but within four years after the qualification of such executor." Code of 1857, p. 400, art. 11.·

Letters of executorship were granted on the 5th of July, 1857; the note fell due on 10th August, 1859, two years after the qualification of the defendant below as executrix.

The statute of limitations begins to run when the cause of action accrues. Johnson v. Poyles, 11 S. & M. 193.

Where the cause of action accrued after the death of the testator, the statute above quoted does not apply. Benjamin v. Robinson, 25 Miss. 507; Pope v. Bowman, Adm'r, 27 ib. 194; McLean v. Raysdale, 31 ib. 702; French v. Davis, 38 ib. 218.

Suppose the note had become due more than four years after the qualification of the executor, will it be contended that the statute applied in such a case? Certainly not; and, to quote the language of the statute, " there was no cause of action against the testator."

But even if the statute applied, and we insist that it does not, it did not commence to run until the maturity of the note, August 10, 1859, and before the expiration of the four years and nine months. The statute was suspended from the 29th January, 1862, until after the commencement of the suit.

If the statute commenced to run from the grant of letters, 5th July, 1857, before the expiration of the four years and nine months, the statute was suspended on 29th January, 1862.

Counsel on both sides have agreed also to submit the following question to the court: Whether the circuit court erred in sustaining the two objections, or either of them, made by counsel for defendant in error, to questions put to, and proof offered to be made, by witness, Bradford?

A written agreement between Moye and Bradford had been introduced in evidence by plaintiffs in error. Bradford, by whom the execution of the written agreement was proven, was asked to state anything more that plaintiff's intestate may have said to him at or before the time of the execution of the written agreement "as to how he, Moye, would be placed in funds to pay the note sued on, recited in the agreement to be then held by him as administrator of Dancey." The record states what proof was expected to be elicited by the questions put to the witness. Counsel for defendant in error objected to the questions and to the admissibility of the evidence. The objection was sustained, and counsel for plaintiffs in error excepted.

The testimony was properly excluded.

1. The action was brought by the administrator of Moye against Bradford (the witness) and Cocke & Buckingham, executors. Bradford was incompetent as a witness, he being a party to the record, and his testimony went to establish his defense, as well as that of his sureties, against the estate of a decedent.

As far as Bradford was concerned, it was agreed that all formal pleadings as to him should be waived, and that, under the plea of the general issue, he might introduce in evidence any facts which were a defense to the action.

One of the material averments of a special plea of payment, filed by Mrs. Buckingham as executrix of Buckingham, is, "that Moye, at the time of the execution of the written agreement, was guardian of the West-

brook heirs, and as such held large sums of money for loan or investment on account of his said wards."

If this plea of payment containing the averment mentioned, was a defense as to the surety, the estate of Buckingham, it was also a defense as to Bradford, the principal in the note ; to establish such a defense, to sustain a single averment in a plea setting up a defence, he is an incompetent witness against the estate of a deceased person.

Suppose an action is brought by an administrator against the principal and surety of a note payable to the intestate.  The principal pleads the general issue with an agreement that any special matter may be given in evidence under it.  The surety pleads that the intestate agreed with the principal to receive lumber in payment of the note, and that the principal delivered the lumber at the time and place agreed upon to the intestate, who accepted the same. No issue is taken on the plea on the trial; the principal is offered as a witness to prove any one, part, or all the allegations in the plea. He is incompetent as a witness, because his testimony goes to establish his own defense.

But the illustration is the case at bar.  Bradford was offered as a witness to prove one statement in the surety's plea of payment. If a defense as to the surety, it was also a defense as to Bradford.

These views are supported by the following authorities : Griffin v. Lower, 37 Miss. 342 ; Lamar v. Williams, 39 ib. 342 ; Otey v. McAfee, 38 ib. 348.

The sureties set up as a defense to the action, that Moye, for a consideration, and with knowledge of their suretyship, and without their knowledge or consent, extended the time of the payment of the note.  Bradford was offered as a witness to establish this defense of the sureties.  The court below permitted him to

testify, and for this reason: that the statute disqualified a party from establishing his own claim or defense against the estate of a deceased person; that Bradford was offered as a witness to establish, not his defense, but one which was personal to the surety, and therefore he was competent.

This reasoning does not apply to that portion of Bradford's testimony which was excluded by the court. The excluded testimony went to establish Bradford's defense as well as the defense of the surety.

It is clear to us that the court did not err in excluding that portion of Bradford's testimony which tended to prove the special plea of payment.

2. The testimony was properly excluded for another reason: that all verbal communications between the parties, at and before the execution of the written agreement, were merged into it, and could not be proved *aliunde.*

SIMRALL, J.:

The "agreed case," settled by counsel, submits six questions, which cover all the substantial points raised in the record.

1. Is the testimony sufficient to sustain the verdict on the pleas of *non est factum?* The promissory notes were signed by Cocke and Buckingham. There was evidence before the jury that Buckingham, the testator, and Stephen Cocke were partners in planting; that their business relations were most intimate, as were their personal relations, being those of uncle and nephew; they were also joint owners of property. Most of the testimony was to the point, whether the note was actually signed by Cocke or Buckingham. The note itself having, before the trial, been accidentally destroyed by fire, it was not practicable for the witnesses who spoke of the handwriting to have been as clear and distinct as if the note had been before

them; nor was it possible to submit the signature to as full and satisfactory tests as if it had been under the inspection of the witnesses. The jury is independent of the judge in responding to an issue of fact. The theory of our system assumes their entire capacity to make a true finding of facts, and therefore it belongs to their province to judge of the credibility and weight of evidence. The court cannot revise and correct errors in the verdict. It may, however, set it aside when against the clear weight and preponderance of the testimony. Quite half, if not a majority, of the witnesses express the opinion that the signature was made by Buckingham. There was also testimony tending to show that it was customary and usual for either, at pleasure, to use the firm signature, and that both recognized the right so to do. We could not, in the face of long-established principles, assume to say that this verdict was wrong on this issue.

2. Was the demurrer properly sustained to the fourth and fifth pleas of Mrs. Buckingham? The former sets up that suit was not brought within six years and nine months after the maturity of the note. The latter, that suit was not brought within four years and nine months after the grant of letters testamentary. The note was due the 10th of August, 1859. Suit was brought 26th April, A. D. 1866. It is manifest, therefore, that deducting the time of the suspension of the statute of limitations, the six years and nine months had not expired. We presume that the question intended to be raised by the demurrer is, that the defendant ought to have averred in her plea, that the six years and nine months had elapsed, deducting therefrom the time of the suspension of the statute, and for the lack of such averment the plea is bad. We have no doubt that it would have been better and more logical pleading to have made the allegation. The court is bound to take judicial notice of the sus-

pension act.   The effect of that statute is to extend
and prolong the time of bringing suit.   This note
maturing in 1859, the operation of the statute was to
enlarge the time for suit about five years, so that the
bar would not attach until about eleven years after its
maturity.   It would not be barred then in six years
and nine months.  · As a question of pleading, such was
the decision in Griffing v. Mills, 40 Miss. 614.   There
was a demurrer to the plea of the statute, of three
years in bar of the writ of error.   The demurrer was
sustained because the act of 31st December, 1862, sus-
pending the statutes of limitations, enlarged the time.
In computing the three years, time would be counted
before the suspension and after its termination only,
no account being taken of the intervening period.   We
accept this authority as decisive of the question, but
repeat the observation that it is better pleading to aver,
in such cases, that the six or three years (or other
time) has expired, deducting the time of the suspen-
sion -of the statutes.   The demurrer was properly sus-
tained to this plea.

4. The fifth plea avers the grant of letters testa-
mentary on the 6th of July, 1857, and that suit was
not commenced within four years and nine months
thereafter.   The 11th art. of the Code of 1857, page
400 (under which this plea was framed), had its
original in the Act of 1844.   As respects the matter
of the plea, both statutes are of the same import.   In
Binghan et al. v. Robertson, 25 Miss. 506, 507, it was
held that the " cause of action" must be in existence,
or have accrued against the testator or intestate, at or
before his death.   So also, McLean v. Ragsdale, 31
Miss. 704; Pope v. Bowman, 27 ib. 197 ; French v.
Davis, 38 ib. 224.   These cases establish the rule, that
the 12th section of the Act of 1844 does not apply
unless the " cause of action" had accrued against the
decedent (whose legal representative is sued), in his

lifetime. The 11th art. of sec. 2, chap. 57, of the Code of 1857, is substantially the same as the 12th section of the Act of 1844, and must receive the same construction.

The cause of action sued on did not exist against Buckingham, the testator, in his lifetime, nor did it accrue against his executrix until two years after the grant of the letters; it follows, then, that her plea was bad, and the demurrer was properly sustained.

5. The tendency of the testimony of Bradford, which was objected to, was to prove a payment of the debt; it went to exonerate himself as well as the sureties. We think such testimony from a surviving party to a contract, is not admissible in a suit by the legal representative of the other party. Faler v. Jordan, 44 Miss. 289, 290, 291.

6. Was the agreement of the 24th of June, 1861, between Bradford and Wyatt Moye, a payment of the note in suit; or a release or discharge of Cocke & Buckingham? It must be confessed, that this paper is very obscure and difficult to understand. It begins by a recital that Moye holds the note as administrator of Wm. Dancey's estate; then follows a statement that, in order to put Moye in funds to the amount of the above note and interest, Bradford has given his individual note for $7,182.64, payable to Moye, guardian for the heirs of Westbrook. It might be inferred from these recitals, that the object of the parties was to change the indebtedness to Dancey's estate to the heirs of Westbrook, of whom Moye was guardian. Being the administrator of the one and guardian of the other, he attempted, as it might seem, to so arrange as to treat Bradford's note as a debt to his wards, and thereby, perhaps, technically cancel his indebtedness to them to that extent, and use their funds to settle the estate of Dancey with creditors and distributees. If that be the true version of the

transaction, then Bradford's note of the 21st of June, 1861, would be the property of the Westbrook heirs. The last clauses of the instrument stipulate, that when Bradford's separate note is paid, then the note in suit is to be considered liquidated and paid, but none of the parties are to be released, nor the first note canceled, until the last· (Bradford's) is fully paid. It is very plain that Bradford, Cocke and Buckingham were to continue bound. If the intent of the parties was to transfer the indebtedness to Dancey's estate to the heirs of Westbrook, then it is manifest that the note in suit should remain in force as a representative and security for that indebtedness. In that view of it, this agreement does not show a payment of the note, but rather that the debt was equitably assigned to another creditor.

It is certain that in June, 1861, no money passed between Bradford and Moye; Moye, being administrator of Dancey's estate, and guardian of Moses Westbrook's heirs, from motives of his own, it would seem, took from Bradford the note payable to himself as guardian, and also held the other note, unpaid and uncanceled.

Moye retained both notes. It is well settled in this court, in harmony with the great weight of authority, that the acceptance of a promissory note is not a payment of a pre-existing debt, unless agreed to be taken as payment, expressly provided the note has not been transferred and is not outstanding in the hands of an assignee. Guion and wife v. Doherty, 43 Miss. 538.

But it was in evidence to the jury that Moye had not the authority of the probate court to ·invest the money of his wards at interest, as required by art. 147, p. 461, Code of 1857; nor in his settlement, or in the settlement of his legal representative, was this indebtedness—either Bradford's note, or the note of Bradford, Cocke and Buckingham—presented in his account as

assets of his wards; nor were they so accounted for in the settlement with Dancey's estate. The notes, then, were his individual property, the funds of his wards not being invested in them, and they being in no wise used for or connected with the estate of Dancey. It may have been the intention of Moye to consider this indebtedness to himself as an investment of the funds of his wards; but he could not so rightfully employ the funds of his wards without the sanction of the probate court, nor could he devolve upon them the risk of the solvency of these debtors.

5. Not having claimed, in his settlements as administrator and guardian, a fiduciary character for the notes, he perhaps abandoned his original purpose to so consider them.

The remaining question is, was time given to Bradford, the principal, without the consent of the sureties, Cocke and Buckingham? Although the proof is clear that they were sureties, it is not so clear that the fact was known to Moye; and, without such notice, none of the parties would be discharged by extending the day of payment. The evidence is that Moye acted as though Bradford were the principal. The jury may have concluded that it was satisfactory proof, in the absence of anything offered to the contrary by the defendant.

The most effectual test, as to whether the sureties are discharged, is to ascertain whether the new credit prevents the holder of the note from bringing an action against the principal. Oxford Bank v. Lewis, 8 Pick. 458; Blackstone Bank v. Hill, 10 ib. 132. In the case under consideration, the agreement expressly states that the note is not to be considered canceled nor the parties released; that is to say, that the note is to continue as though Bradford had not made his note of June, 1861. There is nothing in the contract which takes from the holder the right to call for or enforce

the original debt; nor can this be predicated of anything in the contract, unless from the recital, that Bradford had made his note for seven thousand and odd dollars, due in 1863. In Wade v. Stanton, Buckner & Co., 5 How. 634, the very question was ruled. There, a bill of exchange, maturing some time after the note, was taken from the principal; but it was held that this, of itself, did not discharge the surety. 8 Pick. 458, *supra;* Freeman's Bank v. Rawlins, 13 Me. 205.

This disposes of all the questions made in the agreed case. It follows, therefore, that the judgment should be affirmed.